UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

S.G., on behalf of himself and all others similarly situated,

                    Plaintiff,

  - against -

SYNCHRONY BANK,

                    Defendant.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION AND ORDER**
24-CV-5788(GRB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this putative class action alleging violations of New York state usury laws and consumer protection statutes, on referral for Report and Recommendation from the Honorable Gary R. Brown, is Defendant Synchrony Bank's ("Synchrony" or "Defendant") motion to compel arbitration. *See* Docket Entry ("DE") [20]. Plaintiff S.G. ("Plaintiff" or "S.G.") opposes the motion.[1] DE [20-3]. For the reasons set forth herein, the Court respectfully recommends that the Motion to Compel Arbitration be granted and this action be stayed.[2] Plaintiff also seeks to compel Defendant to participate in a discovery planning conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), DE [24], which

---

[1] In his Complaint, without providing a basis for doing so, Plaintiff identifies himself merely by his initials, "S.G.," and the case is captioned accordingly. Defendant uses Plaintiff's actual name in the instant motion, *see, e.g.*, DE [20-2] at ¶¶ 5-15, without objection from Plaintiff.

[2] As Defendant has requested that the matter be stayed during arbitration, DE [20-1] at 14, the Court recommends that the case be stayed pending arbitration as opposed to being dismissed. *See Smith v. Spizzirri*, 601 U.S. 472, 478, 144 S. Ct. 1173, 1178 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the [Federal Arbitration Act] compels the court to stay the proceeding.").

1

Defendant opposes. DE [26]. Given the Court's recommendation that the motion to compel arbitration be granted, Plaintiff's motion to compel Defendant to participate in a Fed. R. Civ. P. 26(f) conference before this Court, is denied without prejudice.

**I.     BACKGROUND**

    **A.     Relevant Facts**[3]

        1.     The Parties

At the time Plaintiff S.G. commenced this action, he was a resident of the District of Columbia. *See* Complaint ("Compl."), DE [1], ¶ 9. He alleges that, while he was domiciled in New York, but temporarily living in Connecticut, he applied for and received a loan from Defendant that violated the usury laws of the states of New York and Connecticut and the District of Columbia. *Id.* at ¶¶ 10-11. Synchrony is a National Banking Association with a principal place of business located at 170 Election Road, Suite 125, Draper, Utah. *Id.* at ¶ 12. Defendant describes itself as "a premier consumer financial services company delivering customized financing programs across key industries . . . ." *Id.* at ¶ 15. Relevant here, "[o]ne of Synchrony's most popular financial products is called CareCredit," which Synchrony claims "is accepted at more than 250,000 enrolled provider and health-focused retail locations and is used by more than 11 million+ cardholders." *Id.* at ¶¶ 13, 16. Plaintiff has had a CareCredit account with Synchrony since 2021. *Id.* at ¶ 10. S.G. enrolled in

---

[3] Unless otherwise stated, the facts are drawn from the pleadings, the Declaration of Angel Nayman, DE [20-2], and the admissible evidence relied upon in support thereof.

his account online and concedes that the online terms of use govern his account with Defendant. *Id.*

In or about March 2021, Plaintiff sought emergency veterinary care for his pet cat, which he was unable to afford. *Id.* at ¶¶ 49, 52-53. S.G. alleges that, in order to obtain the necessary veterinary treatment, he obtained a "high-interest rate loan from Synchrony Bank," the type of which "often carr[ies] extraordinarily high interest rates above and beyond what is permitted by New York's state usury law" (the "Loan"). *Id.* at ¶ 2. Specifically, the Loan's interest rate was 32.99% per year. *Id.* at ¶¶ 2, 17.

### 2. Plaintiff's Account and the Relevant Arbitration Agreement

In 2021, Plaintiff created an account with Synchrony. *Id.* at ¶ 10; *see* Declaration of Angel Nayman ("Nayman Decl."), DE [20-2], ¶ 6, Ex. A. Before submitting his application, S.G. was presented with "Terms and Conditions" (the "Terms and Conditions"). Nayman Decl. Ex. A at 4. On this screen, Plaintiff was presented with a copy of his Synchrony Bank CareCredit Credit Card Account Agreement ("Account Agreement"). *Id.* Plaintiff had the opportunity to click hyperlinks titled "Download All" and "Credit Terms" and save a copy of the Account Agreement. *Id.* at ¶ 7.

To create his account, Plaintiff was required to check a box stating "I have read and agree to all Terms and Conditions set forth below. Selecting 'Agree & Submit' constitutes my electronic signature." *Id.* at Ex. A at 4. Plaintiff would have been unable to proceed with his application without checking this box. Nayman Decl. ¶ 8.

3

After checking the box, S.G. was prompted to click an additional box that said "Agree & Submit." *Id*. Plaintiff clicked the box and created his account. *Id*. The Terms and Conditions contain an arbitration agreement (the "Arbitration Agreement"), which states in bold, capitalized font:

> **PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

*Id*. at ¶ 13, Ex. B. (emphasis in original). Relevant here, the Arbitration Agreement states that it applies to "disputes about an account transaction, fees, charges or interest . . . ." *Id*. at ¶ 15. Instructions as to how to reject the Arbitration Agreement state:

> You may reject this Arbitration section. If you do that, a court will resolve any dispute or claim. To reject this section, send us a notice within 45 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address, account number, and personal signature, and must be mailed to Synchrony Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section.

*Id*. at ¶ 18. Plaintiff did not reject the Arbitration Agreement and continued to use his card. *Id*. at ¶¶ 20-21.

Finally, the Terms and Conditions prohibit class actions, stating:

> **NO CLASS ACTIONS**. IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT (A) TO PARTICIPATE IN A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS

> REPRESENTATIVE OR CLASS MEMBER, OR (B) TO JOIN OR CONSOLIDATE CLAIMS WITH CLAIMS OF ANY OTHER PERSONS EXCEPT ACCOUNTHOLDERS ON YOUR ACCOUNT. THUS, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.

*Id.* at ¶ 16 (emphasis in original). On March 22, 2021, Synchrony approved Plaintiff's application for a CareCredit account. *Id.* at ¶ 9. Between 2021 and 2023, Plaintiff used loans from Synchrony for his and his cat's healthcare. Compl. ¶¶ 52-53.

### B. Procedural Background

By way of a Complaint filed on August 19, 2024, Plaintiff commenced this putative class action. DE [1]. S.G. asserts causes of action on behalf of himself and a putative class including "[a]ll CareCredit account holders who signed up on CareCredit's website in the United States and accrued interest above 16% per annum during the applicable statutory period." Compl. ¶ 64. Plaintiff alleges that his Loan and loans issued to other individuals violate New York's usury laws, *id.* at ¶¶ 56-72, and asserts causes of action for: (1) "violations of New York's usury laws," including N.Y. Gen. Oblig. Law §§ 5-501, 5-511, and 5-521; N.Y. Banking Law § 14-a(1); and N.Y. Penal Law § 190.40;[4] (2) violation of N.Y. Gen. Bus. Law § 349; (3) breach of the covenant of good faith and fair dealing; and (4) unjust enrichment. *Id.* at ¶¶ 73-102. Plaintiff alleges that subject matter jurisdiction exists based upon the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount-in-controversy exceeds

---

[4] Plaintiff asserts these statutory violations in a single cause of action.

5

$5,000,000 and there are at least 100 class members. *Id.* at ¶¶ 6-7. Moreover, Plaintiff alleges that he is a citizen of Washington D.C., but was a citizen of this District when he entered the Account Agreement, and that Synchrony is a citizen of Utah. *Id.*

On January 1, 2025, Defendant filed the instant motion to compel arbitration on the grounds that Plaintiff's claims are subject to the Arbitration Agreement to which Plaintiff agreed. DE [20]. In opposition, S.G. claims: (1) New York law mandates that the interest rate charged was usurious, (2) the Arbitration Agreement provides that the state and federal courts of New York have "exclusive jurisdiction," and (3) the Arbitration Agreement violates public policy. *See* Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration ("Pl.'s Opp'n"), DE [20-3], at 5-15. For the reasons set forth herein, the Court respectfully recommends that Defendant's motion to compel arbitration be granted. The motion to compel a Rule 26 initial conference is denied without prejudice.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "a written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Collazos v. Garda CL Atl., Inc.*, 666 F. Supp. 3d 249, 260 (E.D.N.Y. 2023) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 943 (1983)); *Hobby Lobby Stores, Inc. v. Christie's Inc.*,

535 F. Supp. 3d 113, 121 (E.D.N.Y. 2021) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Arbitration agreements "are a matter of contract" and, "[w]hen enforcing an arbitration agreement, as with any other contract, the parties' intentions control." *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 533-34 (E.D.N.Y. 2016). Accordingly, "[i]n deciding whether a dispute is arbitrable, [the Court] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015). "There is a 'strong presumption in favor of arbitration' and waiver of the right to arbitration 'is not to be lightly inferred.'" *Boustead Secs., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 450 (S.D.N.Y. 2023) (quoting *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Loc. 812*, 242 F.3d 52, 57 (2d Cir. 2001)).

### III.    DISCUSSION

#### A.    Plaintiff's Claims are Subject to the Arbitration Agreement

Initially, there is no plausible dispute that, if applicable, the Arbitration Agreement applies to Plaintiff. S.G. created his own account and acknowledges that the Terms and Conditions, including the Arbitration Agreement, apply to him. Compl. ¶ 10. The Court further concludes that arbitration of Plaintiff's specific claims is appropriate and that the motion to compel arbitration should be granted.

Relevant here, "[a] 'clickwrap' or 'click-through' agreement 'requires users to click an 'I agree' box after being presented with a list of terms and conditions of use.'" *Zheng v. Live Auctioneers LLC*, No. 20-CV-9744(JGK), 2021 WL 2043562, at *4

(S.D.N.Y. May 21, 2021) (quoting *Meyer v. Uber Techs.*, 868 F.3d 66, 75 (2d Cir. 2017)). To be bound by a clickwrap agreement, "the web user must have 'reasonable notice of the arbitration provision.'" *Zheng*, 2021 WL 2043562, at *4 (quoting *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292 (2d Cir. 2019)); *see Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 47 (E.D.N.Y. 2017) ("[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that [she has] at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance.") (citing *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010)).

In evaluating whether a user had adequate notice and assented to the terms of an arbitration agreement, courts "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in a way that would put [the offeree] on inquiry notice of such terms." *Teta v. Go New York Tours, Inc.*, 738 F. Supp. 3d 502, 509 (S.D.N.Y. 2024) (quoting *Starke*, 913 F.3d at 289). A party will be bound to an arbitration agreement if he has "sufficient opportunity to read the . . . agreement, and assents thereto after being provided with an unambiguous method of accepting or declining the offer." *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 164 (E.D.N.Y. 2012); *see Whitt v. Prosper Funding LLC*, No. 15-CV-136(GHW), 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015) (holding that constructive knowledge is established when a user "affirmatively click[s] a box on [a] website acknowledging awareness and agreement to the terms of

8

[a contract] before . . . [being] allowed to proceed with further utilization of the website") (quoting *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015)).

When creating his account with Defendant, S.G. was presented with a hyperlink that contained the Arbitration Agreement in bold-faced, capitalized font. Nayman Decl. Ex. A. By creating his account and affirming that he had read and consented to the Terms and Conditions, S.G. affirmatively consented to the Arbitration Agreement. *See Lewis v. Samsung Elecs. Am., Inc.*, No. 22-CV-10882(JLR), 2023 WL 7623670, at *9 (S.D.N.Y. Nov. 14, 2023) ("While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice.") (citing *Meyer*, 868 F.3d at 79); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) ("Whether [the plaintiff] actually clicked on the hyperlink to read the [Terms of Service] or the Privacy Policy is immaterial; what matters is that notice of these terms was reasonably conspicuous.").

Plaintiff does not plausibly dispute the conspicuousness of the Arbitration Agreement and, by providing a hyperlink that took Plaintiff to the Arbitration Agreement, Synchrony provided adequate notice. *Feld*, 442 F. Supp. 3d at 831 ("The Supreme Court has found contract terms enforceable where a consumer was directed elsewhere to review the relevant terms.") (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88, 111 S. Ct. 1522, 1525 (1991)); *see Meyer*, 868 F.3d at 80 (holding that providing a hyperlink was sufficient to establish that "the user was agreeing to be bound by the linked terms"); *Borukh v. Experian Info. Sols., Inc.*, No. 24-CV-

9

6022(NRM)(JRC), 2025 WL 1220042, at *10 (E.D.N.Y. Apr. 28, 2025) (enforcing arbitration agreement where "the conspicuousness and placement of the Terms of Use hyperlink, along with the general design, provided plaintiff with reasonably conspicuous notice of the arbitration agreement"); *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 285-86 (E.D.N.Y. 2024) (holding that a conspicuous hyperlink to terms and conditions near a registration website provided adequate notice of an arbitration agreement); *Kern v. Stubhub, Inc.*, No. 24 Civ. 871(AT), 2024 WL 5283923, at *3 (S.D.N.Y. Dec. 17, 2024) (holding that an arbitration agreement was enforceable where a prominently displayed hyperlink "open[ed] the User Agreement, which contain[ed], in bolded and capitalized text, a prominent notice of the arbitration agreement").

To this end, in *Feld*, the Court held that an arbitration agreement was sufficiently conspicuous where a hyperlink containing the terms of service next to a "sign up" button "put reasonably prudent users on inquiry notice." 442 F. Supp. 3d at 831; *see Zaltz v. JDATE*, 952 F. Supp. 2d 439, 454 (E.D.N.Y. 2013) ("As to the fact that plaintiff had to click on a hyperlink to view the Terms and Conditions of Service (rather than view the terms on the same page where she had to indicate her assent to the terms), the Court agrees with the *Fteja* court's analogizing this situation to cruise tickets—plaintiff was shown precisely where to access the Terms and Conditions of Service before she agreed to them . . . ."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (holding that the Plaintiff was bound by the terms of an arbitration agreement where he "was informed of the consequences of his

10

assenting click and he was shown, immediately below, where to click to understand those consequences"). Accordingly, the Arbitration Agreement provided adequate notice of the requirement to arbitrate.[5]

The Court must next consider "whether the scope of that agreement encompasses the claims at issue." *Holick*, 802 F.3d at 394 (citation omitted); *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1033 (2d Cir. 2014) ("'[I]t is the language of the contract that defines the scope of disputes subject to arbitration.'") (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 762 (2002)). When analyzing a "broad" arbitration agreement, there is a "presumption that the claims are arbitrable." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995); *see Bechtel do Brasil Construções Ltda. v. UEG Araucária Ltda.*, 638 F.3d 150, 155 (2d Cir. 2011) (holding that ambiguities as to the scope of an arbitration clause must be "resolved in favor of arbitration"). Given the preference for arbitration where an enforceable arbitration agreement exists, *see Hobby Lobby Stores, Inc.*, 535 F. Supp. 3d at 121, and because Plaintiff asserts claims related to the interest rate related to his agreement with Synchrony, his claims fall within the scope of the Arbitration Agreement. *See Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 32-33 (S.D.N.Y. 2023) (granting motion to compel arbitration even where issue of arbitrability was in question); *Mawing v. PNGI Charles Town Gaming, LLC*, No. 09-CV-68(JPD), 2010 WL 11520680, at *2 (N.D. W. Va. Aug. 18,

---

[5] Plaintiff did not submit an affidavit stating that he did not review or have knowledge of the Arbitration Agreement.

11

2010) (observing the "well-established presumption that any doubts regarding the scope of arbitrable issues are to be resolved in favor of arbitration"). As Plaintiff's claims arise out of the Loan's allegedly usurious interest rate, *see* Compl. ¶¶ 73-102, the Arbitration Agreement applies.

Plaintiff's arguments in opposition primarily address the merits of his claims and the appropriate law to be applied. Pl.'s Opp'n at 6-10. This is an issue that falls squarely within the authority of an arbitrator to consider and decide.[6] *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 528 (S.D.N.Y. 2024) ("It is well established that '[c]hoice-of-law provisions . . . generally designate only the substantive law to be applied by the arbitrators and do not displace application of federal arbitration law to determine the arbitrability of claims or any defenses thereto . . . .'") (quoting *Boustead Secs., LLC*, 656 F. Supp. 3d at 450 n.6); *see Sec. Ins. Co. of Hartford v. TIG Ins. Co.*, 360 F.3d 322, 327 (2d Cir. 2004) ("[A] general choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act.") (internal quotation omitted); *Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997) ("[E]ven the inclusion in the contract of a general choice-of-law clause does not require application of state law to arbitrability issues, unless it is clear that the parties intended state arbitration law to apply on a particular issue."); *see also Pierno v. Fid. Brokerage Servs., LLC*, No. 20-3711, 2021 WL 5986763, at *3 (2d Cir. Dec. 16, 2021) ("This is especially true because [the

---

[6] Plaintiff's reliance on *United States v. Moseley*, 980 F.3d 9 (2d Cir. 2020), *see* Pl.'s Opp'n at 6-10, is misplaced, as *Moseley* is a criminal law case that does not reference arbitration.

12

plaintiff] *could* have secured his 'day in court' if he had initiated arbitration proceedings.") (emphasis in original); *Steele v. L.F. Rothschild & Co.*, 864 F.2d 1, 3 (2d Cir. 1988) (holding that a "party who has been compelled to arbitrate will have her chance to argue that the arbitral forum was the incorrect one when the arbitral award is before the district court in an action for enforcement").

Plaintiff's claim that the Arbitration Agreement violates public policy is similarly meritless. Where, as here, "a party claims that an underlying contract is invalid for violating public policy, that claim is 'to be determined exclusively by the arbitrator . . . .'" *AKF Inc. v. Skybell Techs. Inc.*, 772 F. Supp. 3d 473, 483 (S.D.N.Y. 2025) (citing *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 819 (2d Cir. 2022)); *Bennett v. Barclays Bank Delaware*, No. 24 Civ. 6549(LGS), 2025 WL 2690390, at *4 (S.D.N.Y. Sept. 19, 2025) (granting motion to compel arbitration where an arbitration clause did not prevent the plaintiff from effectively vindicating his Section 349 claim). Accordingly, Plaintiff's argument that the contract is void may be properly addressed by an arbitrator and does not support denying Defendant's motion.

The same is true with respect to Plaintiff's argument that the parties agreed that "exclusive jurisdiction" lies with the state and federal courts of New York. Pl.'s Opp'n at 10-14. The agreement to which S.G. cites is titled "Synchrony Bank Online Credit Site Terms and Conditions for the Synchrony Bank Online Credit Site" and relates to the use of the Synchrony website. *See* Declaration of Arturo Peña Miranda in Opposition to Motion to Compel ("Peña Decl."), DE [20-4], Ex A. It does not relate

13

to the terms of Plaintiff's underlying agreement with Synchrony, which form the basis of his claims of alleged usury, and which are subject to the Arbitration Agreement contained in the Terms and Conditions. Nayman Decl. Ex. A at 4-5. Indeed, the Terms and Conditions specifically state that state or federal law applies "[e]xcept as provided in the Resolving a Dispute with Arbitration section . . . ." *Id.* Accordingly, Plaintiff's argument regarding the "exclusive jurisdiction" of New York courts fails.

Ultimately, given the parties' agreement to arbitrate the claims at issue, Plaintiff's claims in this action, as well as his objections to proceeding in arbitration, are best considered by an arbitrator. Accordingly, the Court respectfully recommends that Defendant's motion to compel arbitration be granted.

### B. Plaintiff's Motion to Compel a Rule 26(f) Conference is Denied

Plaintiff seeks to compel Defendant to participate in a Rule 26(f) discovery planning conference, which Defendant opposes. DE [24], [26]. Having recommended that Synchrony's motion to compel arbitration be granted, an Initial Conference pursuant to Fed. R. Civ. P. 26(f) would not be an efficient use of the Court's or the parties' time or resources. *See Paniccioli v. Northstar Source Grp. LLC*, No. 24 Civ. 9763(DEH)(GWG), 2025 WL 1427007, at *2 (S.D.N.Y. May 16, 2025) (staying discovery where the matter was referred to arbitration); *Palladino v. JPMorgan Chase & Co.*, 730 F. Supp. 3d 4, 13-14 (E.D.N.Y. 2024) (granting motion to stay discovery "pending Defendants' motion to dismiss and compel arbitration"); *see also Vassell v. SeatGeek, Inc.*, No. 24-CV-932(NCM)(JRC), 2025 WL 240912, at *15 (E.D.N.Y. Jan. 17, 2025) ("[A] district court must stay the judicial proceedings upon

'application of one of the parties' where the asserted claims are 'referable to arbitration.'") (quoting 9 U.S.C. § 3); *Fadlelseed v. ABM Aviation JFK*, 751 F. Supp. 3d 207, 217 (E.D.N.Y. 2024) ("When all claims have been referred to arbitration and a stay is requested, the Court *must* grant the stay.") (emphasis in original). Accordingly, the motion to compel Defendant to participate in a Rule 26(f) conference is denied without prejudice.

## V. CONCLUSION

For the reasons set forth herein:

(1) the Court respectfully recommends that Defendant's Motion to Compel Arbitration, DE [20], be granted;

(2) Plaintiff's motion to compel a Rule 26(f) conference, DE [24], is denied without prejudice; and

(3) By February 6, 2026, both parties are instructed to submit a letter, not to exceed two pages, as to whether Plaintiff should remain anonymous or be identified in the caption by his actual name.

## VI. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

15

Dated:   Central Islip, New York         <u>s/ Steven I. Locke</u>
        January 27, 2026              STEVEN I. LOCKE
                                              United States Magistrate Judge